NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| DONALD DUNN and NICOLE DUNN., | : : | |
| Plaintiffs, | : : | Civil No. 20-5848 (RBK/KMW) |
| v. | : : | **OPINION** |
| PHH MORTGAGE CORP., | : : | |
| Defendant. | : : | |

**KUGLER**, United States District Judge:

Presently before the Court is Defendant PHH Mortgage Corporation's Motion to Dismiss (Doc. No. 7) the Complaint under FRCP 12(b)(6). For the reasons express below, Defendant's Motion is **GRANTED** in part.

**I.   BACKGROUND**

This case concerns whether PHH Mortgage Corp's failure to include insurance proceeds in a payoff statement constitutes an "inaccurate" payoff statement in violation of 12 C.F.R. § 1026.36(c)(3) and 15 U.S.C. § 1639g.

**A.   Factual Background**

On May 18, 2009, Plaintiffs Donald and Nicole Dunn ("the Dunns"), Maryland residents, obtained a mortgage for $135,042.00 that was secured by their residential property in Florida. (Doc. No. 1, Compl. at ¶ 31). Section five of the mortgage contract required the Dunns to maintain property insurance "in the amounts . . . and for the periods that Lender requires." (*Id.* at ¶ 32). Section five further stated:

1

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds...shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened . . . if the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(*Id.* at ¶ 33). Over nine years later, the Dunns' Florida residence was damaged by Hurricane Michael. (*Id.* at ¶ 35). Shortly thereafter, the parent company of Defendant PHH Mortgage Corporation, Ocwen Financial Corporation ("Ocwen"), offered the Dunns a repayment plan providing for a three-month suspension of monthly payments until January 2019. (*Id.*). After the Dunns made the January 2019 payment, Ocwen transferred the mortgage to its wholly owned subsidiary PHH Mortgage Corp. (*Id.*). Upon transfer of the mortgage to PHH Mortgage Corp, it cancelled the payment plan and requested modification of the loan. (*Id.*). The Dunns submitted an application to modify the loan but it was denied. (*Id.*). They appealed this denial, and during its pendency, decided to sell the Florida residence. (*Id.*). This decision was driven, in part, by the increased cost of repairs for their residence, and the Dunns promptly notified PHH Mortgage Corp of their decision to sell. (*Id.* at ¶¶ 40, 43).

Around the time the Dunns decided to sell their Florida residence, they submitted claims to their insurance company for the damage caused to the residence by Hurricane Michael. (*Id.* at ¶ 36). Shortly thereafter, the insurance company issued a series of checks jointly payable to the Dunns and PHH Mortgage Corp. (*Id.*). $88,250.70 was deposited into PHH Mortgage Corp's account and it subsequently disbursed a total of $42,895.56 to the Dunns while retaining the remaining $45,355.14. (*Id.* at ¶¶ 37–38). This remainder was not disbursed for repairs to the Florida residence or as a credit to the Dunns' indebtedness. (*Id.* at ¶ 38).

In November of 2019, the Dunns received and accepted an offer to purchase their Florida residence for $87,000. (*Id.* at ¶ 41). Promptly following this decision, they provided PHH

Mortgage Corp with a copy of the sales contract, informed it that the sale was scheduled to close on December 17, 2019, that they would not be completing the repairs on the residence, and that the buyer agreed to accept the property "as is." (*Id.* at ¶ 43). The Dunns also requested a payoff statement from PHH Mortgage Corp, which was needed to close on the transaction, and that the remaining insurance proceeds be applied to the mortgage principal. (*Id.* at ¶¶ 42–43).

On November 5, 2019, PHH Mortgage Corp sent the Dunns a payoff statement as requested, but it did not include the remaining balance of the insurance proceeds as a credit against the principal. (*Id.* at ¶ 44). They requested another payoff statement that accurately reflected the insurance proceeds as a credit, but PHH Mortgage Corp still failed to include it on the payoff statement. (*Id.* at ¶¶ 45–46). This cycle continued until December 20, 2019, when Plaintiff filed a complaint with the Consumer Financial Protection Bureau due to PHH Mortgage Corp's repeated failure to provide a payoff statement that included the insurance proceeds. (*Id.* at ¶ 54). PHH Mortgage Corp responded to the complaint on January 15, 2020, and stated:

> Because funds received as a result of an insurance claim are intended for repairs to a damaged property, this amount is not calculated into a payoff quote. However, we can confirm that the current claim funds balance of $45,355.14 may be deducted from the amount required to pay the loan in full, should you choose to do so. To enable us to apply these funds toward the payoff balance, an affidavit must be completed expressing your intention to utilize the funds toward payoff.

(*Id.* at ¶¶ 55, 57). That same day, PHH Mortgage Corp sent the Dunns correspondence which included a form affidavit where they could check a box, have it notarized, and authorize PHH Mortgage Corp to apply the insurance proceeds towards the outstanding loan amount. (*Id.* at ¶ 59). In January 2020—a month after the sale was supposed to close—PHH Mortgage Corp sent the Dunns a payoff statement that included the insurance proceeds. (*Id.* at ¶ 66). With the payoff statement in hand, the Dunns closed on the sale of their property and were issued a Satisfaction of Mortgage on February 19, 2020. (*Id.*).

3

### B. Procedural History

On May 13, 2020, Plaintiff's filed suit against Defendant PHH Mortgage alleging it violated the Truth in Lending Act, Regulation Z, and the New Jersey Consumer Fraud Act by failing to include insurance proceeds on a payoff statement. (Doc. No. 1). Defendant PHH Mortgage now moves to dismiss the complaint under Rule 12(b)(6). (Doc. No. 7).

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual

4

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III.  DISCUSSION

Defendant PHH Mortgage Corp argues that Plaintiffs' complaint should be dismissed with prejudice for several reasons. Count I of the complaint, the Truth in Lending Act ("TILA") and Regulation Z violations, should be dismissed because PHH Mortgage Corp was a servicer of the mortgage, not the owner, and the payoff statements conformed to the terms of the Mortgage. Count II of the complaint, the New Jersey Consumer Fraud Act claim, should be dismissed because the NJCFA is inapplicable since the Dunns are Maryland residents and borrowed against a Florida residence. And even if it was applicable, Defendant argues the facts as alleged are insufficient to sustain a NJCFA claim.

Plaintiffs respond that PHH Mortgage Corp is the owner of the mortgage because in the "Satisfaction of Mortgage" mailed to the Dunns, it is listed as the "current mortgagee." Likewise, Plaintiffs contend that Defendant did not comply with the terms of the mortgage because it essentially blocked the Dunns' efforts to satisfy the preconditions of the mortgage. Lastly, Plaintiffs argue the NJCFA applies to the Dunns because New Jersey has a substantial interest in having its law applied, and Defendant violated NJCFA by repeatedly refusing to account for the insurance proceeds in the payoff statements. Plaintiffs also request that we take judicial notice of certain documents.

Defendant doubles down on its "owner" argument in its reply brief and contends it is well settled that servicers are not liable under TILA. Specifically, it argues that because PHH

Mortgage Corp merely holds legal title to the Dunns' mortgage while Ginnie Mae holds equitable title, the plain text of 15 U.S.C. § 1641(f) precludes this Court from holding PHH Mortgage Corp liable.

At the outset, we must resolve the parties dispute over whether Defendant's reply brief injects a new argument into this discourse and whether certain documents may be judicially noticed. We find that Defendant has introduced a new argument in its reply brief because it did not raise the Section 1641(f) argument in its initial motion to dismiss. By raising this new argument in its reply brief, Defendant has effectively deprived Plaintiffs of the opportunity to respond. Therefore, this argument and need not be addressed at this stage of the case. *Manasse v. United States*, No. CV 15-4153 (JLL), 2016 WL 7130916, at *4 (D.N.J. Dec. 7, 2016) (noting that new arguments "cannot be raised for the first time in reply briefs.").

Moreover, both parties attempt to improperly back door certain documents in order to bypass the four corners doctrine. For instance, Defendant's argument that it merely holds legal title is not based on the allegations in the complaint, but a declaration attached to its reply. Defendant did not even request this Court take judicial notice of the declaration, rather it merely attached the declaration and then relied on it in the reply brief. We decline to consider the declaration because it is not the type of public record subject to judicial notice and doing so would convert the motion to dismiss into one for summary judgment. *Montgomery v. Beneficial Consumer Disc. Co.*, No. CIV.A. 04-CV-2114, 2005 WL 497776, at *4 (E.D. Pa. Mar. 2, 2005); *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir.1989). Likewise, Plaintiffs request that we take judicial notice of certain exhibits is improper because it effectively asks this Court to consider the exhibits for their truth. Specifically, Plaintiffs request that we judicially notice Exhibit B, a Release of Mortgage executed by PHH Mortgage Corp, because it lists PHH Mortgage Corp as

6

the "current mortgagee." Should a document be judicially noticed, said document "may only be judicially noticed to show what was in the public realm at the time, not whether the contents of those documents are true." *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020). If a court were to consider and judicially notice documents for their truth it would be, in essence, authorizing a trial by public documents, impermissibly expanding the scope of a Rule 12(b)(6) motion. *In Re Viropharma, Inc.*, 2003 WL 1824914 (E.D.Pa. 2003). Unquestionably, Plaintiffs are asking us to judicially notice this Exhibit for its truth because they attempt to use it to show that PHH is the owner of the mortgage.[1] Accordingly, we decline to judicially notice any documents or exhibits and limit our analysis to the four corners of the complaint.

### A. Truth in Lending Act

Plaintiffs allege that PHH Mortgage Corp violated 15 U.S.C. § 1639g and the regulation interpreting this section, 12 C.F.R. § 1026.36(c)(3), because by repeatedly failing to include the insurance proceeds on the payoff statement, PHH Mortgage provided Plaintiffs with an "inaccurate" payoff statement. TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . avoid the uninformed use of credit, and . . . protect . . . against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To effectuate this remedial purpose, courts construe the Act liberally in favor of the consumer. *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir. 1975).

Despite this liberal construction, it is clear that mortgage "servicers" are generally not liable for violations of TILA. Instead, 15 U.S.C. § 1640(a) governs liability. It provides "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement

---

[1] Even if we were to take judicial notice of the exhibits as Plaintiffs request, it would not have an impact on our ruling because we could not consider them for their truth.

7

imposed under this part . . . is liable." 15 U.S.C. § 1640(a). By "part," the statute means Part B, which includes 15 U.S.C. § 1639g. Therefore, it is clear that a creditor can be liable for failing to comply with § 1639g. A "creditor" is defined narrowly in the statute and refers "only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g). There is no allegation in the complaint that Defendant PHH Mortgage Corp., is a creditor. Therefore, in order for Plaintiffs to hold PHH Mortgage Corp liable, they must comply with the terms of 15 U.S.C. § 1641.

> Section 1641(a), in turn, provides:
>
> any civil action for violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation . . . is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a). Section 1641 further states that with respect to consumer credit transactions secured by real property, an assignee of a creditor may be liable for a violation of this subchapter only if: (1) the violation is apparent on the face of the disclosure statement provided in connection with such transaction; and (2) the assignment to the assignee was voluntary. 15 U.S.C. § 1641(e)(1). Section 1641(e)(2) describes a violation apparent on the face of the disclosure statement as a disclosure which can be determined to be inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other

8

disclosure of disbursement. 15 U.S.C. § 1641(e)(2)(A). Lastly, Section 1641(f)(1) makes clear that a servicer will not be treated as an assignee unless it is or was the owner of the obligation. 15 U.S.C. § 1641(f)(1).

As noted above, the violation at issue here is 15 U.S.C. § 1639g. Section 1639g was a recent amendment to TILA as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act and provides that "[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g. Regulation Z, the Consumer Financial Protection Bureau's implementation of Section 1639g of TILA, provides that:

> a creditor, assignee, or servicer, as applicable must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. . . . A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement.

12 C.F.R. § 1026.36(c)(3). The CFPB has explained that "payoff statements should be issued according to the best information available at the time." 78 Fed. Reg. 10902, 10958 (Feb. 14, 2013).

Therefore, for Plaintiffs to state a plausible claim for relief, they must allege that: (1) PHH Mortgage Corp owned the mortgage loan or mortgage servicing rights; (2) the assignment was voluntary; and (3) the payoff statement can be determined to be inaccurate from its face.

Limiting our analysis to the four corners of the Complaint, Plaintiff has stated a plausible claim for relief. First, while Plaintiff alleges that PHH Mortgage Corp is the "servicer" of the loan, it also alleges the mortgage was transferred to PHH Mortgage Corp and that it issued the satisfaction of mortgage. Accepting these allegations as true and construing them in the light

most favorable to Plaintiffs, they are sufficient to raise the inference that PHH Mortgage Corp owned the mortgage loan or servicing rights, and that the assignment was voluntary. *Wilson v. JPMorgan Chase Bank, NA*., No. CIV.2:09-863 WBSGGH, 2010 WL 2574032, at *9 (E.D. Cal. June 25, 2010) (finding the plaintiff sufficiently pled that defendant mortgage servicer was liable under TILA when it was not clear who the loan's holder was); *Pelayo v. Home Capital Funding*, No. 08-CV-2030IEGPOR, 2009 WL 1459419, at *4 (S.D. Cal. May 22, 2009) (same). Moreover, Plaintiffs have alleged sufficient facts to raise a plausible inference that the payoff statement is inaccurate. Specifically, Plaintiffs alleged that PHH Mortgage Corp repeatedly refused to include the insurance proceeds on its payoff statement and that this exclusion caused the payoff statement to be inaccurate. *McLaughlin v. Wells Fargo Bank*, NA, No. C 15-02904 WHA, 2015 WL 10889993, at *2 (N.D. Cal. Oct. 29, 2015) (finding the plaintiff sufficiently pled that Wells Fargo was liable under TILA when it failed to include the existence of the plaintiff's insurance proceeds on the payoff statement). Although Defendant contends this Court should rely on the reasoning of the *Davidson* court, which considered an almost identical mortgage contract, that case is different from the one at bar. In *Davidson*, the court concluded the payoff statement contained an accurate payoff balance even though it did not include the insurance proceeds because the plaintiff did not suggest that repair to the property was economically infeasible or that PNC's security would be lessened. *Davidson v. PNC Bank, N.A*., No. 1:16-CV-569-WTL-MPB, 2016 WL 7179371, at *4 (S.D. Ind. Dec. 9, 2016). Here, in contrast, Plaintiffs suggest that repair to the Florida residence was not economically feasible when they alleged that they "decided to sell the Property, in part due to increased prices to repair" the residence. This allegation is just enough to shift this case outside the ambit of *Davidson*. Therefore, Plaintiffs

10

have pled a plausible claim for relief that Defendant failed to provide an accurate payoff statement when it did not include the balance of the insurance proceeds on the statement.

### B. New Jersey Consumer Fraud Act

Defendant and Plaintiffs dispute whether New Jersey law is applicable to the Dunns' claims given that they are residents of Maryland and the subject property is located in Florida. This is not a close call. We agree with Defendant that New Jersey law is inapplicable and therefore Plaintiffs' NJCFA claim fails.

A federal court exercising federal question jurisdiction over a federal claim and supplemental jurisdiction over related state law claims applies the choice-of-law rules of the state of the forum." *Neopart Transit, LLC v. Mgmt. Consulting, Inc*., No. CV 16-3103, 2017 WL 714043, at *11 (E.D. Pa. Feb. 23, 2017); *see also Rohm & Haas Co. v. Adco Chem. Co*., 689 F.2d 424, 429 (3d Cir. 1982) ("[A] federal court whose jurisdiction over a state claim is based . . . on pendency to a federal claim . . . must apply the conflicts of law principles of the forum state."). Therefore, New Jersey's choice of law rules control.

New Jersey has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 962 A.2d 453, 459–60 (2008). This is a two-part test. The first part of the choice-of-law inquiry is to determine whether or not an actual conflict exists between the laws of the potential forums. *Lebegern v. Forman*, 471 F.3d 424, 429–30 (3d Cir.2006); *see Camp Jaycee*, 962 A.2d at 460 ("Procedurally, the first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is distinction between them . . . If not, there is no choice-of-law issue to be resolved."). Because Plaintiffs concede that

there is a conflict between New Jersey and Florida's consumer fraud laws, we need only decide whether there is an actual conflict between New Jersey and Maryland's consumer fraud laws.

We agree with Defendant that the balance of the case law shows there is an actual conflict between New Jersey and Maryland's consumer fraud laws. *Margulies v. Chase Manhattan Mortg. Corp.*, No. A-4087-03T3, 2005 WL 2923580, at *7 (N.J. Super. Ct. App. Div. Nov. 7, 2005) (finding an actual conflict between New Jersey and Maryland's consumer fraud statutes because Maryland requires proof of scienter while New Jersey does not, and New Jersey allows for treble damages while Maryland leaves it to the court's discretion); *Avram v. Samsung Elecs. Am., Inc.*, No. CIV. 2:11-6973 KM, 2013 WL 3654090, at *19 (D.N.J. July 11, 2013) (same). [2]

Moving to step two, we must determine which state has the more significant relationship to the consumer fraud issue by examining the Restatement (Second) of Conflict of Laws factors that apply to fraud actions, found in Section 148. Section 148 of the Restatement states:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>     (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>     (b) the place where the plaintiff received the representations,
>     (c) the place where the defendant made the representations,

---

[2] It is unclear from Plaintiffs' complaint and brief whether the theory under the NJCFA is an omission, an affirmative act, or both. Because this Court was uncertain, it construed it as alleging both. But even if Plaintiffs' theory was premised on an omission, which requires intent, there would still be a conflict between Maryland and New Jersey due to the differences in remedies.

12

>> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971). Section 148(a) does not apply because the Defendant's alleged false representations were made in New Jersey and Plaintiffs' reliance, if any, on Defendant's alleged misrepresentations occurred in the state where they resided at that time—either Maryland or Florida. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 447 (D.N.J. 2012). Therefore, we must look at the factors in Section 148(2).

On balance, these factors point to Maryland or Florida as having the most significant relationship to the claim at issue, not New Jersey. As noted, Plaintiffs' reliance, if any, on Defendant's alleged misrepresentations or omissions would have occurred in Maryland or Florida. Receipt of these alleged misrepresentations or omissions also would have occurred in either of these states, not New Jersey. The fifth factor, "[t]he place where [the] tangible thing which is the subject of the transaction between the parties was situated at the time," favors Florida because that is where Plaintiffs' residence is located. Similarly, Plaintiffs' purchased the residence in Florida. The fourth factor—the domicile, residence, and place of business or incorporation of the parties—does not favor any particular jurisdiction because Plaintiffs are citizens of Maryland and Defendant is a citizen of New Jersey. The only factor that points toward New Jersey is where the alleged misrepresentations were made. But numerous courts have held that the mere fact that a company is headquartered in New Jersey or "that unlawful conduct emanated from New Jersey" will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2). *Maniscalco v. Brother Int'l Corp.*, 793 F.Supp.2d 696,

13

708 (D.N.J.2011); *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10–1456, 2010 WL 4116997, at *3–4, 2010 U.S. Dist. LEXIS 110942, at *11–14 (D.N.J. Oct. 18, 2010) (collecting cases); *see also Cooper v. Samsung Electronics America, Inc.*, 374 Fed.Appx. 250, 255 (3d Cir.2010). Thus, New Jersey does not have the most significant relationship to the claim at issue.

This determination is further bolstered by the factors listed in § 6 of the Restatement. The interests of interstate comity favor applying the law of a state where the injured party resides;[3] here, Plaintiffs reside in Maryland. Second, the interests of the parties look to what law the parties reasonably expected would apply in light of their transaction. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 450 (D.N.J. 2012). Measured as of the time the alleged conduct occurred, this factor favors Florida because that is the state in which Plaintiffs' purchased the property. Third, because Plaintiffs' injuries occurred in Florida, it has an interest in protecting its consumers from in-state injuries caused by foreign corporations. Neither party has made a showing that judicial administration favors either jurisdiction, and therefore this factor is neutral. Finally, the competing interests of the states favors Maryland because "every state has an interest in having its law applied to its resident claimants." Therefore, while it is uncertain whether Maryland or Florida has the more substantial relationship to the consumer fraud claim, it is clear that New Jersey does not. Accordingly, because New Jersey law does not apply, Count II of Plaintiffs' Complaint, the NJCFA claim, is **DISMISSED WITH PREJUDICE**. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012).

## IV.     CONCLUSION

For the reasons expressed above, Defendant's Motion to Dismiss is **GRANTED** in part. An appropriate order follows.

---

[3] *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 450 (D.N.J. 2012).

Dated: 3/8/2021                                                s/ Robert B. Kugler
                                                                                                                          ROBERT B. KUGLER
                                                                                                                          United States District Judge